UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRYAN DAVID SOMERS,<br><br>Defendant. | CRIMINAL ACTION NO.<br>4:20–CR–005–JPB–WEJ |

**ORDER ON NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on the Magistrate Judge's Non-Final Report and Recommendation [Doc. 41]. This Court finds as follows:

**BACKGROUND**

On June 25, 2019, the Polk County Police Department located an IP address advertising multiple files of child pornography for download. [Doc. 35, p. 6]. Through the IP address service provider, detectives identified Bryan Somers ("Defendant") as the IP address account holder and 19 Corinth Road, Cartersville, Georgia, as the service address. Id. at 10. Further investigation revealed that 19 Corinth Road was listed as the home address on Defendant's driver's license and that of his spouse, Jennifer Somers, as well as on their vehicle registrations, and that Defendant was not at work on June 25, 2019. Id. at 11. With this information,

police obtained a search warrant for Defendant's home at 19 Corinth Road. Id. at 13. Members of several law enforcement agencies—the Department of Homeland Security ("DHS"), Georgia Bureau of Investigation ("GBI"), Bartow County Sheriff's Office and Polk County Police Department—arrived at Defendant's home to execute the search warrant on July 19, 2019, shortly before 6:00 AM. Id. at 14–15, 16. On that morning, two vehicles, an SUV and a truck, were parked next to one another in front of Defendant's residence, and a third vehicle, a sedan, was parked behind the truck "along the curb." Id. at 16–17. Around 6:15 AM, Defendant exited his home carrying small items in his hands and began walking toward the sedan.[1] Id. at 17–18, 45. When Defendant was four to five feet from the driver's side door of the sedan, law enforcement announced their presence, at which time Defendant "immediately stopped walking." Id. at 18.

Shawn Owens, a Special Agent for DHS, placed his hand on Defendant's wrist and told him that he was not under arrest but that he was being detained. Id. at 20. Defendant then placed his keys and phone on the roof of the sedan. Id. Special Agent Owens handcuffed Defendant and patted him down,[2] then walked

---

[1] Out of concern for officer safety and the safety of anyone inside Defendant's home (e.g., his wife and children), law enforcement waited to execute the warrant until Defendant exited his home. [Doc. 35, pp. 17–18].
[2] Special Agent Owens could not recall if Defendant was carrying his wallet in his hands or if Special Agent Owens found the wallet in Defendant's pocket when patting him

him approximately three feet to a marked police car; Defendant's phone and keys were carried with him and placed on either the roof or hood of the car. Id. at 46–47, 48, 21, 51. Defendant stood outside the police car—i.e., he was not placed in the back of the car—to wait. Id. at 49. While Defendant was being detained, law enforcement observed a pistol in the center console and a long knife on the floorboard of the sedan. Id. at 20.

After Defendant willingly provided a key, officers entered the home and escorted Defendant's wife and children from the house. Id. at 21–22. Special Agent Owens briefly walked through the home then returned to speak with Defendant at the marked car. Id. at 22–23. Less than five minutes passed between Special Agent Owens' leaving Defendant to wait at the car and his return to speak with Defendant. Id. at 50. At that time, Special Agent Owens reiterated that Defendant was not under arrest, asked if Defendant was willing to speak with the officers and stood by while another officer removed Defendant's handcuffs. Id. at 23. Special Agent Owens explained then that Defendant was free to leave. Id. at 51. Nonetheless, Defendant said that he was willing to speak with them. Id. at 23. The officers gathered Defendant's belongings, including his cell phone. Id. at 24.

---

down. [Doc. 35, pp. 47–48]. If Special Agent Owens found the wallet in Defendant's pocket during the pat-down, he would have removed it. Id.

Defendant asked if he could call his employer to inform them about his anticipated absence that day; the officers agreed but suggested that he do so upstairs, where it was quieter. Id. Once inside, the officers handed Defendant his cellphone for the call but retained the phone when Defendant was finished. Id. at 56–57.

Defendant proceeded into an upstairs bedroom, where he spoke with Special Agent Owens, an agent from the GBI and an investigator from the Bartow County Sheriff's Office. Id. at 24. Special Agent Owens testified that the upstairs bedroom was "standard bedroom size," id. at 53, and that he and his two colleagues, along with Defendant, were spaced "several feet from each other," id. at 55. Special Agent Owens again told Defendant that he was not under arrest and was free to leave, id. at 25–26, but "out of an abundance of caution," Special Agent Owens read Defendant his Miranda warnings, id. at 25. Defendant and the officers proceeded to have a conversation. Id. at 26. Defendant did not request an attorney but did ask if he was going to be arrested, id. at 27, 55; Special Agent Owens answered that they "had not yet made a decision on that," id. at 28. The officers ended the interview upon Defendant's request. Id. at 26.

Meanwhile, agents located a computer in Defendant's home. Id. at 28–29. During the execution of the warrant, a computer forensics agent conducted a

4

preview of the computer and found the presence of child sex abuse material.³ Id. at 29–30. Officers seized the computer and Defendant's cellphone.⁴ Id. at 30. At that point, the officers explained to Defendant that he was going to be arrested on child pornography charges, and Defendant was then taken to the Bartow County Sheriff's Office and placed in a holding cell. Id. at 32–33.

On March 4, 2020, a grand jury indicted Defendant for distribution, receipt and possession of child pornography. [Doc. 1]. Defendant filed a Motion to Suppress Statements and Phone on June 11, 2020, [Doc. 20], and filed an Amended Motion to Suppress Statements and Phone on August 28, 2020, [Doc. 28]. Magistrate Judge Walter E. Johnson held an evidentiary hearing on Defendant's Motions on September 2, 2020. [Doc. 29]; [Doc. 35]. On January 6, 2021, the Magistrate Judge issued a Non-Final Report and Recommendation

---

³ During this time period (i.e., after Defendant spoke with the officers upstairs but while the search was still underway), Defendant sat on a couch downstairs. [Doc. 35, p. 57]. Special Agent Owens estimates that Defendant sat on the couch for approximately thirty minutes to an hour before he was formally arrested. Id. at 58.

⁴ The search warrant for Defendant's home covered cellphones and other electronic devices. [Doc. 35, p. 30]. On July 22, 2019, three days after the execution of the search warrant at Defendant's home, an investigator from the Bartow County Sheriff's Office obtained a search warrant for Defendant's cellphone and subsequently searched the phone. Id. at 59–60; [Doc. 31-7].

recommending that Defendant's Motions be denied. [Doc. 41]. Defendant filed objections to the Report and Recommendation on January 14, 2021. [Doc. 44].

## ANALYSIS

**A.    Legal Standard**

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.  Notably, a party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  Placing this burden on the objecting party "'facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.'" United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Nettles v. Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B 1982)).

Defendant objects to the Report and Recommendation and argues that his statements and evidence from his cellphone should be suppressed. [Doc. 44]. As

to the suppression of Defendant's statements, Defendant argues that the Report and Recommendation concluded only that Defendant was properly detained and did not address Defendant's argument that his statements followed an illegal *de facto* arrest, which would mandate the statements' exclusion. Id. at 1–2. As to the suppression of evidence from Defendant's cellphone, Defendant contends that the Magistrate Judge was incorrect to reach the following conclusions: that Defendant was within the curtilage of his home when his cellphone was seized, id. at 4; that Defendant's cellphone was lawfully seized incident to his arrest, id. at 6; and that law enforcement had sufficient probable cause to seize his cellphone, id. at 8. These objections are discussed below.

**B.      Defendant's Objections**

    1.      *Suppression of Statements*

Defendant first objects to the Report and Recommendation's finding that he was lawfully detained and, as such, lacked a basis for the suppression of his subsequent statements. Defendant argues that his statements were the result of an unlawful *de facto* arrest and should thus be suppressed.[5]

---

[5] As a point of clarification, Defendant does not object to the lawfulness of his arrest after officers discovered child pornography on the computer in his home. [Doc. 44, p. 3 n.2]. Instead, Defendant argues that *prior* to that arrest and *prior* to the discovery of the child pornography on the computer, he was unlawfully detained such that his detention

7

Under the exclusionary rule, evidence obtained as the result of an unlawful search or seizure may be suppressed at trial.  See, e.g., Herring v. United States, 555 U.S. 135, 139 (2009).  To be permissible under the Fourth Amendment, the seizure of a person must generally be supported by probable cause.  Michigan v. Summers, 452 U.S. 692, 696 (1981).  However, there are exceptions to this general rule:

> some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity.

Id. at 699; see also Florida v. Royer, 460 U.S. 491, 498 (1983).  Detaining an individual during the execution of a search warrant, for example, constitutes "a 'seizure' within the meaning of the Fourth Amendment."  Summers, 452 U.S. at 696; see also Terry v. Ohio, 392 U.S. 1, 16 (1968).  In Summers, the United States Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  452 U.S. at 705 (footnote omitted).  Because this kind of detention is limited in scope, minimally intrusive and justified

---

amounted to a *de facto* arrest for which police—at that point in time—lacked probable cause.

by legitimate law enforcement interests, the Supreme Court held that it does not require a showing of probable cause. Royer, 460 U.S. at 499; see also Bailey v. United States, 568 U.S. 186, 193 (2013). And although not unlimited, "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Summers, 452 U.S. at 705 n.19).

When a seizure, or detention, that can be justified on less than probable cause exceeds its permissible scope, it may elevate into a *de facto* arrest that would require probable cause to be lawful under the Fourth Amendment. See United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003). Distinguishing between a lawful seizure and a *de facto* arrest requires courts "to consider the law enforcement purposes to be served by the [seizure] as well as the time reasonably needed to effectuate those purposes." United States v. Sharpe, 470 U.S. 675, 685 (1985). When executing a search warrant, law enforcement may take "reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." Los Angeles County v. Rettele, 550 U.S. 609, 614 (2007). Reasonableness, or "whether the actions taken by the officers were objectively reasonable in light of the facts known to them at the time," is the key inquiry.

9

Croom v. Balkwill, 645 F.3d 1240, 1249 (11th Cir. 2011); see, e.g., United States v. Maddox, No. 3:10-CR-004, 2010 WL 4312922, at *7 (N.D. Ga. Sept. 7, 2010) ("[S]o long as it was reasonable under the circumstances to detain [the defendant] during the execution of the search warrant by handcuffing and seating him in the rear of a police car, he was not subjected to an illegal detention or a *de facto* arrest."), R. & R. adopted, No. 3:10-CR-04-01, 2010 WL 4312905 (N.D. Ga. Oct. 22, 2010).

In the Report and Recommendation, the Magistrate Judge determined that Defendant's statements should not be suppressed because they occurred during a period of lawful detention incident to the execution of a search warrant. [Doc. 41, p. 18]. Specifically, the Magistrate Judge found that the detention did not exceed its allowable scope and thus did not rise to the level of a *de facto* arrest. Id. at 18–21. Defendant objects on the grounds that the officers elevated his detention to a *de facto* arrest by retaining his keys, wallet and phone. [Doc. 44, p. 2].

Defendant cites Florida v. Royer, 460 U.S. 491 (1983), to support his argument that the officers' retention of his personal effects transformed the detention into an arrest. See [Doc. 44, p. 2]. In Royer, police stopped the defendant in the Miami airport because he matched the characteristics of a drug courier. 460 U.S. at 493–94. Upon the police's request, the defendant produced

10

his airline ticket and driver's license, which the police retained, then accompanied the police to a small room. Id. at 494, 502. Without the defendant's consent, the police retrieved the defendant's two pieces of checked baggage and brought it to the room. Id. at 494. The defendant did not provide express oral consent to the search of his first suitcase, but he provided police with a key and, when asked, said that he did not object to a search of his second suitcase. Id. at 494–95. Police found drugs in the luggage and subsequently arrested the defendant. Id. at 495. The encounter—from the police's initial contact to the defendant's arrest—lasted approximately fifteen minutes. Id.

The issue before the Supreme Court in Royer was whether the defendant had been unlawfully detained such that his consent to the search of his luggage was invalid as a matter of law. Id. at 497. The Supreme Court held that while his temporary detention was initially legal, it subsequently became "a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity." Id. at 502.

Royer, however, is distinguishable from the case at bar. Here, unlike in Royer, Defendant was detained incident to the execution of a search warrant. As noted earlier, an officer has "categorical" authority to detain an individual in this situation; that authority does not fluctuate with "the extent of the intrusion to be

11

imposed by the seizure," such as whether the defendant's identification or other effects are retained by the officer.  Mena, 544 U.S. at 98 (quotation marks omitted).  Because they were executing a search warrant and detaining Defendant incident to that process, the officers in this case, then, were situated differently from the police in Royer, who had no such warrant to justify their detention of the defendant.

Furthermore, Defendant proposes an interpretation of Royer that is at odds with the ruling in that case.  According to Defendant, the Supreme Court held in Royer that "by retaining the defendant's identification and ticket, the police elevated the encounter to an arrest, for which they did not have probable cause." [Doc. 44, pp. 2–3].  However, the police's retention of the defendant's identification and airline ticket was not, standing alone, dispositive of whether the defendant was effectively under arrest; it was but one factor in a larger analysis of the defendant's encounter with the police.  Royer, 460 U.S. at 502–03.  In addition to observing that the officers kept the defendant's identification and ticket, the Supreme Court also noted that the encounter "escalated into an investigatory procedure in a police interrogation room" and that the defendant "was never informed that he was free to board his plane if he so chose."  Id. at 503.  All of these factors *together*—the police's retention of the defendant's identification,

interrogation of the defendant in a small room and failure to inform him that he was free to leave—meant that "[a]s a practical matter, [the defendant] was under arrest." Id.

Even under this more accurate reading of Royer, Defendant cannot prevail by arguing that his own encounter with the officers in his home was similarly "escalated."[6] Defendant was questioned in his own home, and nothing in the record suggests that the upstairs bedroom of his house resembled a "police interrogation room" like the one in Royer. Further, unlike the defendant in Royer, Defendant here was expressly told multiple times that he was free to leave.[7]

Defendant also cites to legal authority from the Eleventh Circuit Court of Appeals supporting the proposition that retaining a defendant's airline ticket and identification constitutes a seizure of the defendant. See [Doc. 44, p. 3]. But this Court does not disagree that Defendant was seized; it is clear that a detention incident to a search warrant—the circumstances here—constitutes a seizure. See Summers, 452 U.S. at 696, 696 n.5. Rather, the Court disagrees with Defendant's proposition that a detention incident to a search warrant becomes unreasonable, or

---

[6] In his objections, Defendant does not appear to argue that his temporary detention was escalated in any way other than by the officers' retention of his phone and identification.
[7] The Court also notes that while in the upstairs bedroom, Defendant asked the officers "if he was going to be arrested." [Doc. 35, p. 55]. This question suggests that Defendant did not believe that he had yet been placed under arrest.

13

transforms into a *de facto* arrest, once the detaining officer retains the individual's personal effects, and Defendant has given this Court no reason to believe that Summers is limited in this manner.

The Report and Recommendation explained the applicability of the Summers rule to Defendant's situation, and the Court agrees with that analysis. [Doc. 41, p. 19]. Defendant was thus lawfully detained incident to the execution of a search warrant, and his detention did not transform into a *de facto* arrest upon the retention of his personal items.[8] As such, Defendant lacks a basis for the suppression of his statements, and accordingly, Defendant's objection on this ground is **OVERRULED**.

2. *Suppression of Cellphone Evidence*

The Court will assume without deciding that Defendant's first two objections on the issue of evidence from his cellphone are correct: that Defendant was outside the curtilage when the cellphone was seized (and thus that it was outside the scope of locations subject to the search warrant) and that it was not lawfully seized incident to arrest. However, the Court finds that the seizure of the cellphone was nonetheless lawful under the exigent circumstances doctrine.

---

[8] Having concluded that Defendant was not subject to a *de facto* arrest, the Court declines to address the remainder of Defendant's argument on this point (i.e., that the *de facto* arrest was without probable cause).

14

"Probable cause to seize property is what it sounds like—a belief that evidence will *probably* be found in a particular location." United States v. Babcock, 924 F.3d 1180, 1192 (11th Cir. 2019). This "is not a high bar" and "requires only 'a substantial chance' that evidence of criminal activity exists." Id. (first quoting District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018), then quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)). Probable cause alone will not justify the seizure of an individual's property; usually, such a seizure requires a warrant. Id. at 1194. However, under the exigent circumstances doctrine, officers may conduct a warrantless seizure "when probable cause has been established to believe that evidence will be removed or destroyed before a warrant can be obtained." United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990); see also United States v. Bradley, 644 F.3d 1213, 1262 (11th Cir. 2011) ("Exigent circumstances exist 'when there is danger that . . . evidence will be destroyed or removed." (quoting United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991))). The test for exigency is an objective one, asking if "the facts . . . would lead a reasonable, experienced agent to believe that evidence *might* be destroyed before a warrant could be secured." Bradley, 644 F.3d at 1262 (quoting Tobin, 923 F.2d at 1510). The exigent circumstances exception to the warrant requirement is "particularly compelling" in cases concerning electronic

15

files because they can be easily destroyed during a search. Babcock, 924 F.3d at 1194.

The exigent circumstances exception is applicable in this instance and justifies the seizure of Defendant's cellphone. As to probable cause, police had evidence, based on the IP address information, that an individual at Defendant's home address had committed a crime: advertising child pornography for download. Police were admittedly unsure of the precise user responsible for this activity or of the exact device used to upload the files,[9] but based on their investigation, they believed that a device or devices at Defendant's home would contain evidence of child pornography. Defendant, further, was one of only two adults who resided at the address in question. The Court believes that these "'facts within the collective knowledge of law enforcement officials'" were enough "'to cause a person of reasonable caution to believe that a criminal offense'" had been committed and that "that evidence of that offense w[ould] be found in a particular

---

[9] As explained in the Report and Recommendation, internet service providers assign an IP address to the router at a given physical location; multiple devices can connect to the internet through that router. [Doc. 41, p. 3 n.3]. Any device connected to the internet through the router would have the same IP address. Id. Defendant told police that he would occasionally remove the password protection from his router. [Doc. 35, p. 31]. This meant that any individual in the vicinity of Defendant's home who looked for an internet connection could connect to Defendant's router, and that individual's internet activity would occur under the IP address linked to Defendant.

16

place." Babcock, 924 F.3d at 1192 (quoting Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018)).  As such, police had probable cause to seize Defendant's cellphone.

As to exigent circumstances, Defendant had the "'ability and incentive'" to "'destroy damning information contained on' his phone." Id. at 1194–95 (quoting Bradley, 644 F.3d at 1262–63).  The police's presence at his home would have alerted Defendant to the likelihood of an investigation into criminal activity.  As noted, electronic files, like those stored on a cellphone, present a particularly persuasive case under the exigent circumstances doctrine.  Any relevant data on Defendant's phone "could have been 'quickly destroyed while [the] search [wa]s progressing.'" Id. at 1194 (alterations in original) (quoting Young, 909 F.2d at 446).  The Court thus finds that exigent circumstances existed based on the risk that evidence on Defendant's cellphone would be destroyed during the search warrant's execution.

Notably, the officers here did not "conduct a warrantless search.  Instead, faced with the potential destruction of evidence, they did exactly what [the Eleventh Circuit] suggests they should have done—they seized the phone 'to prevent the loss or destruction of its contents,' and then obtained a warrant before searching through it." Id. at 1195 (quoting United States v. Hernandez-Cano, 808

F.2d 779, 782 (11th Cir. 1987)); see also United States v. Marsh, No. 2:19-CR-566, 2021 WL 4318313, at *10 (N.D. Ala. July 27, 2021) (upholding the warrantless seizure of the defendant's cellphone on exigent circumstances grounds because law enforcement "had reason to believe that [the defendant], their primary suspect, would delete any incriminating evidence on his phone before a warrant could be obtained"), R. & R. adopted, No. 2:19-CR-566, 2021 WL 4311020 (N.D. Ala. Sept. 22, 2021).  Accordingly, the seizure of Defendant's cellphone was permissible under the exigent circumstances exception to the warrant requirement.  Defendant's objection on this ground is **OVERRULED**.

## CONCLUSION

After reviewing the entirety of the Non-Final Report and Recommendation and considering Defendant's objections, the Non-Final Report and Recommendation [Doc. 41] is **ADOPTED** in part.  For the reasons stated herein, Defendant's Motions [Docs. 20, 28] are **DENIED**.

**SO ORDERED** this 26th day of January, 2022.

J. P. BOULEE
United States District Judge